**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GLORIA CARTER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, AN ILLINOIS Municipal Corporation,<br><br>Defendant. | No. 20-cv-1083<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gloria Carter (Carter) alleges that Defendant City of Chicago (the City) denied her access to the City's emergency shelter program while she was homeless due to her disability, osteoarthritis. Carter filed suit against the City claiming that she requested and was denied a reasonable accommodation for her disability, in violation of the American with Disabilities Act, 42 U.S.C. §12101, *et seq.* (the ADA) and Section 504 of the Rehabilitation Act of 1973 (the Rehabilitation Act), 29 U.S.C. § 791, *et seq*. The City moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 25, Mot. Dismiss.[1] For the following reasons, the City's Motion to Dismiss is granted in part and denied in part.

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

1

## Background

The City operates an overnight shelter program (Shelter Program). R. 1, Compl. ¶ 11.[2] To access an emergency shelter bed in Chicago, a person must either call 311 or go to a police station or hospital, where the staff will call 311 on his/her behalf. *Id.* ¶ 12. After a 311 call is made, the person seeking shelter must wait where the call was made until a delegate agency picks that person up in a van and delivers that person to a shelter facility selected by the City. *Id.* ¶ 13. Delegate agencies often bring homeless individuals to Pacific Garden Mission (Pacific Garden). *Id.* ¶ 14. Pacific Garden, Chicago's largest homeless shelter, is not City-funded but participates in the City's Shelter Program. *Id.* With the exception of a shelter called Sarah's Circle and a few others, the majority of City-funded shelters participating in the Shelter Program are inaccessible to individuals who cannot independently climb stairs. *Id.* ¶ 16.

The City funds a delegate agency, Catholic Charities, to provide transportation, triage, and placement of Shelter Program individuals and families in open bed shelters across the City. Compl. ¶ 20. Many, if not all, of the vans that Catholic Charities uses to transport people experiencing homelessness are not accessible to people with mobility disabilities. *Id.* ¶ 21.

Carter is an individual with osteoarthritis. Compl. ¶ 43. As a result, she is not able to climb stairs or independently enter a standard model van that has not been

---

[2]The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

modified for use by people with disabilities. *Id.* ¶ 43. In mid-August 2019, Carter was homeless. *Id.* ¶ 44. On August 11, 2019, Carter was admitted to Weiss Hospital because she had fluid in her legs that caused her skin to break open. *Id.* ¶ 46. Carter was scheduled to be released the afternoon of August 13, 2019. *Id.* On the morning of August 13, 2019, a social worker at Weiss Hospital called 311 to locate a shelter for Carter. *Id.* ¶ 47. Catholic Charities responded and indicated that it would send a van to pick up Carter and take her to Pacific Garden. *Id.* ¶ 48.

Carter waited for the van from Catholic Charities from 3:00 p.m. to 12:00 a.m. in the waiting room at Weiss Hospital. Compl. ¶ 49. The Catholic Charities van did not arrive until approximately 1:30 a.m. on the morning of August 14, 2019. *Id.* ¶ 51. Upon arrival, the driver helped Carter place her walker into the van. *Id.* ¶ 52. Carter asked the van driver if he had a stepstool for the van, and he replied that he did not. *Id.* ¶ 53. The driver informed Carter that if she could not access the van independently, he would have to leave her. *Id.* Carter asked if there was an accessible van to take her to Pacific Garden, to which the driver said no. *Id.* ¶ 54. He also informed Carter that Pacific Garden had about thirteen steps to enter the building. *Id.* ¶ 55. Carter told him that she could not climb stairs. *Id.* The driver left, so Carter slept in a bus shelter across the street from the hospital that night. *Id.* ¶ 56.

Eventually, Carter was admitted to Sarah's Circle on August 15, 2019. Compl. ¶ 62. However, Carter was informed that she could only stay at Sarah's Circle for six months, that is, until February 14, 2020, at which time she would have to leave. *Id.*

On February 13, 2020, Carter filed a two-count Complaint against the City, asserting claims under Section 504 of the Rehabilitation Act (Count I) and Discrimination under the ADA (Count II). In her prayer for relief, Carter seeks declaratory relief, a preliminary and permanent injunction, compensatory damages, and several other forms of relief. The City moves to dismiss Carter's Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

## Legal Standards

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570

4

F.3d 811, 820 (7th Cir. 2009). Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digital, Inc. v. Sears Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor*, 875 F.3d at 853 (citing *Apex Digital*, 572 F.3d at 444). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3d at 444 (internal citations omitted).

## Analysis

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). To that end, Title II of the ADA provides that "no qualified individual

5

with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." § 12132; *Foley v. City of LaFaytte*, 359 F.3d 925, 928 (7th Cir. 2004). The Rehabilitation Act specifically prohibits federally funded organizations from discriminating on the basis of disability. *Wis. Community Services v. City of Milwaukee,* 465 F.3d 737, 746 (7th Cir. 2006); *see also Shuhaiber v. Illinois Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020) (The ADA and the Rehabilitation Act both prohibit discrimination against qualified persons with disabilities.). In the Seventh Circuit, the ADA and Rehabilitation Act are "functionally identical." *Wagoner v. Lemman*, 778 F.3d 586, 592 (7th Cir. 2015). To state a claim under the ADA and the Rehabilitation Act, an individual must allege that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of the "services, programs or activities of a public entity"; (3) she was denied those benefits or otherwise discriminated against on account of her disability, and for the Rehabilitation Act claim, the additional requirement that (4) the defendant is an entity which receives federal funds. *Clemmons v. Dart*, 168 F. Supp. 3d. 1060, 1065 (N.D. Ill. 2016).

## I. Sufficiency of ADA and Rehabilitation Claims

The City raises three arguments to support its contention that Carter has not stated a claim under either the ADA or the Rehabilitation Act.[3] First, the City argues

---

[3]The City does not challenge that Carter adequately alleged that she is disabled; that she is qualified for the benefits and services sought; that the City is a public entity; or for purposes of the Rehabilitation Act claim, that the City receives federal funds. Therefore, the City waives any such contentions. *See G& S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538

6

that Carter has not alleged that she was *denied* a benefit based on her disability. Mot. Dismiss at 4. Second, the City contends that the Complaint does not adequately allege that the services provided by Pacific Gardens constitute a "service, program, or activity" of the City. *Id.* at 7. Third, the City maintains that the Complaint fails to adequately allege that the Shelter Program was not readily accessible to individuals with disabilities. *Id.* at 6. The Court disagrees with the City's arguments and finds that Carter has sufficiently stated claims under both the ADA and the Rehabilitation Act.

First, Carter alleges sufficient facts that the City denies access to its emergency Shelter Program. Carter alleges that the van transport that responded to her 311 call was not equipped for her disability and that she was told that there was no such accessible van transport. Compl. ¶¶ 51–54. Carter further alleges that she was told that to gain entrance to Pacific Gardens, she would have to climb approximately 13 steps and that when she told the driver she could not climb stairs, the driver left her. *Id.* ¶¶ 53, 55–56. These factual allegations raise a plausible inference that the City's Shelter Program denies access on account of disability.

Second, the City's contention that Carter fails to properly allege that the services provided by Pacific Garden are a "service, program, or activity" of the City, fares no better. As noted by Carter, this argument ignores the fact that Carter only

---

(7th Cir. 2012) ("a party waives an argument by failing to make it before the district court," including "affirmative argument[s] in support of a motion to dismiss"). No matter, as the Court finds that Carter has pled that she was disabled; that she qualified for the benefits and services of the City's Shelter Program; that the City is a public entity; and that the City receives federal funds.

encountered Pacific Gardens through the City's operation of its Shelter Program. R. 29, Resp. at 5. At this juncture, Carter has pled enough to raise the inference that the City and Pacific Garden are engaged in a joint venture or that the City's acts were the result of a close relationship with Pacific Gardens.[4]

Finally, the Court finds that Carter has properly alleged that the City's emergency shelter program is not "readily accessible."[5] The City's argument is premised on the fact that Carter was able to gain access to another shelter, Sarah's Circle. Mot. Dismiss at 6–7. The fact that Carter was able to go to Sarah's Circle does not mean that the City's Shelter Program is readily accessible. True, as the City argues, a program need not provide "perfect accessibility" in order to comply with the ADA. R. 35, Reply at 3. But, contrary to the City's contention, Carter has not just pled discrimination regarding a single shelter on a single night. Mot. Dismiss at 4. Rather, she alleges that "the overwhelming majority of beds available through Defendant's emergency shelter program are in inaccessible buildings," resulting in reduced likelihood of placement in a shelter for people with mobility-related disabilities than for people without such disabilities." Compl. ¶¶ 17–18. She also alleges facts relating to her own experience of being refused service to the City's emergency Shelter Program when her disability prevented her from accessing the shelter program's van

---

[4] As Carter points out, an identical argument was rejected by Judge Gettleman in *Martin v. Emmanuel*, 2019 WL 4034506, at *4–5 (N.D. Ill. Aug. 27, 2019). In *Martin*, Judge Gettleman found that Martin raised an inference that the City and Pacific Gardens are engaged in a joint venture or that the City's acts were the result of a close relationship with Pacific Gardens. *Id.* So too here.

[5] Because the Court finds that Carter has adequately alleged that the City's Shelter Program was not readily accessible, it does not opine on whether the "readily accessible" standard applies only to city-owned buildings under 28 U.S.C. § 150.

8

and the PGM shelter, as well as facts alleged by the plaintiff in *Martin*, 19-cv-1708, that she was unable to obtain a bed at two shelters—PMG and Cornerstone—due to her disability. *Id.* ¶¶ 23–24, 52–54. These allegations are sufficient, at the pleading stage, to show that the City's shelter program is not readily accessible to individuals with physical disabilities. *See Wright v. Giuliani*, 2000 WL 777940, at *6 (S.D.N.Y. June 14, 2000), *aff'd,* 230 F.3d 543 (2d Cir. 2000).

The Court finds, in viewing the allegations as true (as it must), that Carter has adequately pled causes of action under the ADA and the Rehabilitation Act.

## II. Standing

Alternatively, the City posits that even if the Court finds that Carter adequately alleges ADA and Rehabilitation Act claims, the Court should dismiss the Complaint because Carter lacks standing to seek declaratory or injunctive relief. For a party to have "Article III standing, three requirements must be satisfied: (1) she must have suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there must be a causal connection between her injury and the conduct complained of; and (3) there must be a likelihood that this injury will be redressed by a favorable decision." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620–21 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To have standing for declaratory or prospective injunctive relief, plaintiffs must face a "real and immediate threat of injury," as opposed to a threat that is merely "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983).

The City argues that Carter's future injury is not "certainly impending" and there is no "substantial risk" that future harm will occur again, because although Carter alleged she was homeless at the time she filed her Complaint, she has failed to update her pleading to reveal her current status. Mot. Dismiss at 9–10.

Carter responds that courts evaluate standing at the time the complaint is filed and argues that she alleged an injury in fact on the day she filed. Resp. at 9–10. Carter contends that unlike the plaintiff in *Martin* (who, at the complaint filing, had an apartment and the right to stay until the end of her lease), she alleged both that her stay at Sarah's Place was due to expire the day after she filed the Complaint and that she would have nowhere to go. *Cf. Martin*, 2019 WL 4034506, at \*3 (finding that the *Martin* plaintiff lacked standing for injunctive relief, because she was living in an apartment and faced no imminent threat of becoming homeless or being subjected to discrimination again); *see also* Compl. ¶¶ 65–66. Meaning, on the date she filed the Complaint, Carter was in imminent need of access to the City's allegedly discriminatory Shelter Program. Carter further maintains that each case cited in the City's Motion to Dismiss is distinguishable, as each involves injuries much more speculative than her immediate threat of homelessness with her Sarah's Place stay expiring just one day later. *See* Mot. Dismiss at 10–11 (citing, among other cases, *Hummel v. St. Joseph Cnty. Bd of Comm'rs*, 817 F.3d 1010, 1017 (7th Cir. 2016) (affirming grant of summary judgment disposing of claims for injunctive relief as to plaintiff's ADA claims because plaintiffs presented no evidence that they planned to return to the non-compliant courthouse)). Carter is correct that standing is evaluated

10

at the time of the complaint filing (*see Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 928 (7th Cir. 2013)), and the Court agrees that the cases cited by the City in its Motion to Dismiss are distinguishable and finds that the Reply cases are similarly unhelpful.[6] The Court finds that unlike the *Martin* plaintiff, Carter sufficiently alleged an injury in fact for purposes of standing.

Carter also argues that the City's argument really centers on mootness, and the Court again agrees with Carter. "[S]tanding must be present at all stages of the litigation . . . [and w]hen a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness." *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010) (citations omitted). But unlike standing, which requires the *plaintiff* to bear the burden of showing that she has standing for each form of relief sought, *see Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017), it is the *defendant* who bears the burden of showing that an action is moot, *see Banks v. Dougherty*, 2010 WL 747870, at *6 (N.D. Ill. Feb. 26, 2010) (citing *Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988, 999 (7th Cir. 2002)). The City has not even attempted, at this time, to meet its "heavy burden" of showing that Carter's action is moot. *See id.*

---

[6]The cases cited in the City's Reply are no more helpful to the City's argument. Reply at 6–7 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (plaintiff who had been placed in a chokehold lacked standing to seek injunctive relief because he failed "to establish a real and immediate threat that he would . . . be stopped for any [] offense, by an officer . . . who would illegally choke him into unconsciousness . . . .")). The City also cites out-of-Circuit district court cases in its Reply. *Id.* (citing *Naiman v. New York University*, 1997 WL 249970 at *1 (S.D.N.Y 1997); *Tyler v. Kansas Lottery*, 14 F. Supp. 2d 1220, 1225 (D. Kan. 1998)). None of these cases involve similarly imminent injuries like the threat of homelessness in one day.

11

Because Carter sufficiently alleged that she faced an imminent and real threat of injury at the time of filing (her shelter stay was expiring in one day and she had nowhere to go) and the City has not even attempted to meet its burden of showing mootness, this Court finds that it has Article III standing over Carter's request for injunctive and declaratory relief.

### III. Compensatory Damages

In order to recovery compensatory damages under the ADA or Rehabilitation Act, a plaintiff must allege intentional discrimination, which can be established by a showing of deliberate indifference. *Lacy v. Cook Cnty*, 897 F.3d. 847, 863 (7th Cir. 2005). Deliberate indifference is shown when the defendant (1) knew that a harm to a federally protected right was substantially likely, and (2) failed to act on that likelihood. *Id*. at 862. A plaintiff can satisfy the knowledge element by showing that she alerted the "public entity to her need for accommodation or that the need for accommodation is obvious or required by statute or regulation." *Reyes v. Dart,* 2019 WL 1897096, *9 (N.D. Ill. Apr. 29, 2019).

Here, the Court finds that Carter has not sufficiently pled that the City was deliberately indifferent to her disability. Carter does not allege that at the time the call was placed on her behalf to the City, the City was alerted that it needed to dispatch an accessible van. In fact, according to the allegations in the Complaint, the first time Carter requested an accessible van was after the van arrived. As such, the City was not provided any advance notice of the need for an accessible transport vehicle. Carter argues that the *Martin* lawsuit put the City on notice that its Shelter

12

Program discriminated against disabled people and the City failed to fix the program. Carter contends that failing to send an accessible van to pick her up in light of *Martin* shows the City's deliberate indifference.

But Carter's reliance on *Martin* does not save her Complaint, as nothing in Carter's Complaint reveals any advance notice to the City that it needed to dispatch an accessible van to transport Carter to Pacific Garden. Carter cites only one case, *Clemmons*, 168 F. Supp. 3d. at 1070, for the proposition that certain individuals in need of ADA compliant services are excused from communicating that fact to their service provider. *Clemmons*, however, as noted by the City, is factually distinguishable. In *Clemmons*, the plaintiff was a double-amputee confined to a wheelchair, housed in defendant's jail, who was not provided one of the multiple, ADA-complaint cells in the jail. *Id.* at 1070. The court found that the defendant had knowledge of the plaintiff's need for an ADA-complaint cell and failed to provide him with one. *Id.* at 1070–71. In this case, nowhere in Carter's Complaint does she allege that, prior to the 311 call, the City was aware of the fact that Carter was disabled and would need an accessible van. Carter therefore has failed to sufficiently plead that the City was deliberately indifferent to her disability, and as such, her compensatory damages claim cannot survive a motion to dismiss.

## Conclusion

For the foregoing reasons, Defendant City of Chicago's Motion to Dismiss [25] is granted in part and denied in part. Plaintiff Carter's claim for compensatory damages is dismissed without prejudice. Carter's claim for declaratory and injunctive

relief may proceed. Carter has until March 10, 2021 to file an amended complaint consistent with this Opinion. A status hearing is set for March 17, 2021 at 9:30 a.m. but to track the case only (no appearance is required; the case will not be called).

                                      Franklin U. Valderrama
                                      United States District Judge

DATED: February 17, 2021