**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GLORIA CARTER and DISABILITY RIGHTS ACTION COALITION FOR HOUSING | ) ) ) | No. 2020-cv-1083 |
| | ) | Judge Franklin U. Valderrama |
| Plaintiff, | ) ) | Magistrate Judge Heather K. McShain |
| v. | ) ) | JURY DEMANDED |
| CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER AND
<u>AFFIRMATIVE DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT</u>**

Defendant City of Chicago, by and through its attorney, Celia Meza, Acting Corporation Counsel, hereby files its Answer and Affirmative Defenses to Plaintiffs' Amended Complaint and states as follows:

## NATURE OF THE ACTION

1. This case is about the physical inaccessibility of the emergency homeless shelter program ("emergency shelter program") funded and operated by Defendant. Defendant denied Ms. Carter access to its emergency shelter program because Ms. Carter's disability prevents her from climbing stairs and climbing into inaccessible vans. Members of DRACH have similarly been denied access to Defendant's emergency shelter program based on their mobility disabilities.

**ANSWER:** The City admits that Plaintiffs purport to bring a claim about the alleged physical inaccessibility of the emergency shelter program. The City denies that the emergency shelter program is inaccessible. Defendant denies that Plaintiffs Carter and members of DRACH were denied access to the City's emergency shelter program based on their disabilities.

2. Defendant violated Ms. Carter's and DRACH's members' right to be free from discrimination on the basis of their disabilities by failing to design, fund, and operate Defendant's emergency shelter program in a manner that would provide equivalent services to Ms. Carter, members of DRACH, and other individuals with mobility disabilities. Defendant's failure to provide an accessible emergency shelter program also forced DRACH to divert its time and resources away from other housing initiatives and has impeded and undermined DRACH's ability to find permanent housing solutions for its members.

**ANSWER:** Denied.

3.      Ms. Carter and DRACH—on behalf of itself and its members—bring this complaint under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (the "ADA"), and Section 504 of the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 791 et seq. (the "Rehabilitation Act") and seek: (1) a declaration that Defendant's conduct constitutes illegal discrimination against Ms. Carter and members of DRACH based on their disabilities; and (2) an injunction prohibiting Defendant's discriminatory conduct by ordering Defendant to make its emergency shelter program accessible to individuals with disabilities. Ms. Carter also seeks compensatory damages for Defendant's deliberate indifference to her right to be free from this discriminatory conduct.

**ANSWER:** Defendant states that Paragraph 3 merely contains a recitation of the legal claims raised in the Amended Complaint and a summary of the relief sought by Plaintiffs, and that no answer thereto is required. The City admits that Plaintiff purports to bring claims under the listed statutes, but denies liability thereunder.

## PARTIES

4.      Ms. Carter resides in Chicago, Illinois.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegation contained in Paragraph 4, and therefore denies it.

5.      Ms. Carter is an individual with osteoarthritis, a condition that significantly limits her mobility. She uses a walker to get around.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 5, and therefore denies them.

6.      Ms. Carter is a qualified individual with a disability under the ADA and the Rehabilitation Act.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegation contained in Paragraph 6, and therefore denies it.

7.      DRACH is an unincorporated association of grassroots leaders with disabilities who either live in or need affordable, accessible housing. All current members of DRACH have experienced housing instability or homelessness. All current members of DRACH qualify as individuals with a disability under the ADA and the Rehabilitation Act.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations contained in Paragraph 7, and therefore denies them.

2

8. Defendant City of Chicago is a municipal corporation with its principal offices located at City Hall, 121 N. LaSalle Street, Chicago, Illinois. The City of Chicago is a home rule unit of local government under the 1970 Constitution of the State of Illinois and has the authority to promote the health, safety, and welfare of its inhabitants.

**ANSWER:** Admitted.

9. Defendant is a "public entity" as defined by Title II of the ADA. 42 U.S.C. § 12131(1).

**ANSWER:** Admitted.

## JURISDICTION

10. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (conferring jurisdiction over civil actions arising under laws of the United States) since they arise out of the protections provided in Section 504 of the Rehabilitation Act and Title II of the ADA.

**ANSWER:** The City admits that Plaintiffs have alleged claims that purportedly arise under federal statutes, but denies that Plaintiffs have stated a claim against the City, denies that it is liable under those statutes, and denies that Plaintiffs are entitled to relief. The City further denies that Plaintiffs have Article III standing.

11. Ms. Carter's and DRACH's claim for declaratory and other relief are authorized by 28 U.S.C. §§ 2201 and 2202.

**ANSWER:** Defendant admits that 28 U.S.C. §§ 2201 and 2202 authorize declaratory relief and other relief. However, Defendant denies that Plaintiffs are entitled to such relief.

12. This Court is the appropriate venue under 28 U.S.C. § 1391(b) in that Defendant is subject to personal jurisdiction in this District and the events giving rise to this Complaint occurred in this District.

**ANSWER:** The City admits that venue is proper, but lacks information sufficient to formulate a belief regarding where all of the alleged events giving rise to this Complaint occurred.

## BACKGROUND

I. **Applicable Laws**

   A. **The Americans with Disabilities Act**

13.     The ADA contains three substantive Titles that address discrimination in the areas of employment, public services, and public accommodations. Ms. Carter and DRACH bring this complaint under Title II of the ADA, which governs public services and protects individuals from discrimination by public entities on the basis of their disability.

**ANSWER:**  Defendant admits the first sentence of Paragraph 13. Defendant further

admits that Plaintiffs bring their claims under Title II of the ADA. Defendant denies that it has

violated Title II of the ADA.

14.     A public entity includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1).

**ANSWER:** Defendant admits that Paragraph 14 accurately quotes portions of 42

U.S.C. § 12131(1), but denies that it accurately reflects the entirety of the language in that

section.

15.     The law governing Title II is found at 42 U.S.C. § 12101 *et seq*. and is codified at 28 C.F.R. § 35.101 *et seq*.

**ANSWER:**  Admitted.

16.     The ADA prohibits Defendant from discriminating against Ms. Carter, members of DRACH, or other individuals with disabilities based solely on their disabilities. 42 U.S.C. § 12132(a).

**ANSWER:**  Defendant admits that the ADA prohibits public entities from

discriminating against individuals with disabilities. Defendant denies that it has violated Title

II of the ADA.

17.     The ADA requires that Defendant, "in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability — [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service . . . ." 28 C.F.R. § 35.130(b)(1)(i).

**ANSWER:**  Defendant admits that Paragraph 17 accurately quotes a portion of 28

C.F.R. § 35.130(b)(1)(i), but denies that Paragraph 17 accurately reflects the entirety of the

language in 28 C.F.R. § 35.130(b)(1), and denies that it accurately summarizes the language

28 C.F.R. § 35.130(b)(1).

18.    The ADA also prohibits Defendant from providing "a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others . . . ." 28 C.F.R. § 35.130(b)(1)(ii).

**ANSWER:** Defendant admits that Paragraph 18 accurately quotes a portion of 28 C.F.R. § 35.130(b)(1)(ii), but denies that Paragraph 18 accurately reflects the entirety of the language in 28 C.F.R. § 35.130(b)(1), and denies that it accurately summarizes the language 28 C.F.R. § 35.130(b)(1).

19.    Further, the ADA prohibits Defendant from providing "a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result or gain the same benefit, or to reach the same level of achievement as that provided to others . . ." 28 C.F.R. § 35.130(b)(1)(iii).

**ANSWER:** Defendant admits that Paragraph 19 accurately quotes a portion of 28 C.F.R. § 35.130(b)(1)(iii), but denies that Paragraph 19 accurately reflects the entirety of the language in 28 C.F.R. § 35.130(b)(1), and denies that it accurately summarizes the language 28 C.F.R. § 35.130(b)(1).

20.    The ADA prohibits Defendant from "directly or through contractual or other arrangements, utiliz[ing] criteria or methods of administration . . . [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . ." 28 C.F.R. § 35.130(b)(3)(ii).

**ANSWER:** Defendant admits that Paragraph 20 accurately quotes a portion of 28 C.F.R. § 35.130(b)(3)(ii), but denies that Paragraph 20 accurately reflects the entirety of the language in 28 C.F.R. § 35.130(b)(3), and denies that it accurately summarizes the language 28 C.F.R. § 35.130(b)(3).

21.    The ADA requires Defendant to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

**ANSWER:** Defendant admits that Paragraph 21 accurately quotes a portion of 28 C.F.R. § 35.130(d), but denies that Paragraph 21 accurately reflects the entirety of the language in 28 C.F.R. § 35.130(d).

22.     Subject to certain exceptions not applicable here, "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity . . ." 28 C.F.R. § 35.149.

**ANSWER:** Defendant admits that Paragraph 22 accurately quotes a portion of 28

C.F.R. § 35.149, but denies that Paragraph 22 accurately reflects the entirety of the language

in 28 C.F.R. § 35.149.

### B.     The Rehabilitation Act

23.     Section 504 of the Rehabilitation Act prohibits discrimination by recipients of federal funding against otherwise qualified individuals on the basis of their disabilities. 29 U.S.C. § 794.

**ANSWER:** Paragraph 23 consists of legal conclusions and thus requires no answer.

Defendant states further that Section 504 speaks for itself, and no answer is required to

Paragraph 23.

24.     The Rehabilitation Act and the ADA are functionally identical except that the Rehabilitation Act also requires proof of the receipt of federal funds. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

**ANSWER:** Paragraph 24 consists of legal conclusions and thus requires no answer.

## II.     Defendant's Emergency Shelter Program

25.     On information and belief, Defendant operates its emergency shelter program through its Department of Family and Support Services, which distributes funding to, and coordinates placement in, Chicago's homeless shelters.

**ANSWER:** Admitted.

26.     To access an emergency shelter bed in Chicago, Defendant requires a person experiencing homelessness to either call 311 or go to a police station or hospital, where the staff will call 311 on their behalf.

**ANSWER:** Defendant admits that 311 must be called to request access to the City's

shelter program. Defendant denies the remainder of the allegations in Paragraph 26.

27.     After a 311 call has been made, the person seeking shelter must wait where the call was made until a delegate agency picks that person up in a van and delivers that person to a shelter facility selected by Defendant.

**ANSWER:** Defendant admits that individuals seeking shelter are generally required to await transportation to an available shelter at the location where he or she placed the call. The remainder of Paragraph 27 is vague, and Defendant lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore, denies the remaining allegations in Paragraph 27.

28.     On information and belief, Pacific Garden Mission ("PGM shelter") does not receive direct funding from Defendant's emergency shelter program, but participates in the program's intake process by receiving homeless individuals the City is serving in its emergency shelter program. As the largest homeless shelter in the City, PGM shelter is one of the primary places where Defendant's delegate agency brings homeless people when they attempt to access emergency shelter in Chicago.

**ANSWER:** Defendant admits that Pacific Garden Mission does not receive City funding. Defendant denies the remaining allegations in Paragraph 28.

29.     On information and belief, except for PGM shelter, the emergency shelters that are part of Defendant's emergency shelter program receive funding from Defendant. Even though it does not receive direct funding, PGM shelter is part of the City's services, programs, or activities in that the City incorporates PGM into the City's intake and triage program for providing emergency shelter through its program.

**ANSWER:**  Denied.

30.     On information and belief, Defendant and PGM shelter are engaged in a joint venture or the City's reliance on PGM shelter is the result of a close relationship with PGM shelter.

**ANSWER:**  Denied.

31.     On information and belief, with the exception of the shelter called Sarah's Circle and maybe another shelter or two, the approximately 60 shelters funded by Defendant to participate in its emergency shelter program are inaccessible to individuals who cannot independently climb stairs.

**ANSWER:**  Denied.

32.     On information and belief, the overwhelming majority of beds available through Defendant's emergency shelter program are in inaccessible buildings.

**ANSWER:** Defendant states that the phrase "overwhelming majority of beds" is vague, and therefore lacks knowledge of information sufficient to form a belief as to the truth of the allegations in Paragraph 32, and therefore denies same.

33.    On information and belief, the lack of accessible beds results in a reduced likelihood of placement in a shelter for people with mobility-related disabilities than for people without such disabilities.

**ANSWER:** Denied.

34.    At the present time, Defendant funds a delegate agency, Catholic Charities, to provide transportation, triage, and placement of individuals and families in open shelter beds across the city as part of Defendant's emergency shelter program.

**ANSWER:** Denied.

35.    Catholic Charities' transportation, triage, and placement of individuals and families in open shelter beds across the city is part of the City's services, programs, or activities.

**ANSWER:** Denied.

36.    On information and belief, many, if not all, of the vans Catholic Charities uses to transport people experiencing homelessness to emergency shelters are not accessible to people with mobility disabilities.

**ANSWER:** Denied.

37.    Defendant's municipal operations constitute a "program or activity" within the meaning of § 504 of the Rehabilitation Act. 29 U.S.C. § 794(b)(1).

**ANSWER:** Paragraph 37 consists of legal conclusions and thus requires no answer. If and to the extent an answer is required, Defendant states that "municipal operations" is unintelligibly vague, and therefore it is unable to answer the allegations of Paragraph 37 as stated.

**III. DRACH and Its Mission**

38.    DRACH, when originally formed over 30 years ago, was an organization of people with disabilities advocating for affordable accessible housing with member chapters in several cities across the United States.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38, and therefore denies them.

39.     On information and belief, the Chicago chapter is now, and has been for some years, the only remaining active chapter in the United States.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39, and therefore denies them.

40.     DRACH has operated in Chicago for approximately 30 years.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40, and therefore denies them.

41.     DRACH's members are unpaid volunteers, all of whom are people with disabilities and all of whom wish to advocate for affordable, accessible housing for people with disabilities.  Although all members are and have been people with disabilities, DRACH is open to membership to allies without disabilities who share its interest in advocating for affordable, accessible housing for people with disabilities.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41, and therefore denies them.

42.     DRACH's members operate by consensus, identifying campaigns and selecting strategies for advancing those campaigns as a group.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42, and therefore denies them.

43.     DRACH typically meets at Access Living of Metropolitan Chicago ("Access Living"). An organizer employed by Access Living supports DRACH's activities. In addition to paying this organizer a salary to support DRACH, Access Living supervises the organizer's work, requiring the organizer to report on DRACH's campaigns, monitoring progress in those campaigns, and supporting DRACH's campaigns with additional Access Living resources.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43, and therefore denies them.

44.     For about the last five years, the organizer supporting DRACH has been Cathleen O'Brien.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44, and therefore denies them.

45.     Over the last 30 years, DRACH has been involved in many campaigns seeking to increase the availability of affordable, accessible housing.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45, and therefore denies them.

46.     In addition to their work concerning Defendant's emergency shelter program, DRACH has successfully participated in an effort to build new affordable, accessible housing in Jefferson Park, an effort to pass an ordinance to require City funded housing providers to prioritize people in congregate settings for occupancy of vacant housing and an effort to add source of income to the list of protected classes in the Illinois Human Rights Act, among other campaigns.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46, and therefore denies them.

47.     Currently, DRACH has 40 members. All of DRACH's current members are people with disabilities. Many of DRACH's members are people with mobility disabilities. All of DRACH's current members have experienced housing instability or homelessness.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47, and therefore denies them.

48.     About half of DRACH's current members have tried to access Defendant's emergency shelter program because of their housing instability. DRACH members with mobility disabilities have been denied access to Defendant's emergency shelter program based on their mobility disabilities.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence in paragraph 48, and therefore denies them. Furthermore, Defendant denies the allegation in the second sentence of Paragraph 48.

49.     Other members, believing that their mobility disabilities made Defendant's emergency shelter program inaccessible to them, have sought shelter without trying to access Defendant's emergency shelter program by methods such as riding public transit for shelter instead of for transit or extending stays in hospital emergency rooms beyond what was required for medical treatment.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49, and therefore denies them.

50.     As of the filing of this Amended Complaint, two DRACH members with mobility disabilities are currently experiencing homelessness.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50, and therefore denies them.

51.    As of the filing of this Amended Complaint, three additional DRACH members with mobility disabilities are currently at risk of losing their present housing.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51, and therefore denies them.

## IV.    DRACH's Emergency Shelter Campaign

52.    In early 2017, a new member of DRACH, Laura Martin, shared with the other members her challenge of finding an accessible bed in Defendant's emergency shelter program, and the other members began sharing their similar experiences.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52, and therefore denies them.

53.    Because of the personal experience of half the members of DRACH, and the information members of the group have received about experiences attempting to access Defendant's emergency shelter program, all of the members of DRACH are concerned that Defendant's emergency shelter program is not accessible to them.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53, and therefore denies them.

54.    Recognizing their shared experiences, DRACH decided to initiate a campaign to convince Defendant to make its emergency shelter program accessible to people with disabilities.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54, and therefore denies them.

55.    On or about May of 2017, by email, by written letter, and by personal visit, DRACH, with the assistance of Cathleen O'Brien, began reaching out to Defendant's Department of Family and Support Services ("DFSS") to ask for a meeting to discuss the inaccessibility of the Defendant's emergency shelter program.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55, and therefore denies them.

56.    Defendant did not respond to these requests.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56, and therefore denies them.

57.     In June of 2017, with Defendant still not responding to DRACH's request for a meeting, DRACH issued a Freedom of Information Act ("FOIA") request to the Defendant seeking information about the accessibility of Defendant's emergency shelter program.

**ANSWER:** Denied.

58.     On December 20, 2017, having not received a response to DRACH's FOIA request, DRACH, with the assistance of Cathleen O'Brien, organized and held a protest at DFSS' office demanding a meeting.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58, and therefore denies them.

59.     During the protest, a reporter arrived. Shortly after the reporter arrived, DFSS staff asked a delegation from the DRACH protesters to meet with them in their office.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59, and therefore denies them.

60.     During that meeting, DFSS staff agreed to schedule a meeting with DRACH concerning the accessibility of Defendant's emergency shelter program.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60, and therefore denies them.

61.     In or about February of 2018, DFSS staff met with DRACH members and Cathleen O'Brien at Access Living's office. The parties were not able to reach agreement with respect to any of DRACH's accessibility requests, so DRACH asked for a follow-up meeting.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61, and therefore denies them.

62.     DFSS staff agreed to a follow up meeting, but never arranged it despite repeated requests from DRACH to schedule the meeting.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62, and therefore denies them.

63.     After about three months of trying to schedule a follow up meeting, DRACH began to consider other options for raising their concerns about the inaccessibility of Defendant's emergency shelter program. For example, DRACH and Cathleen O'Brien met with a state legislator to explore a state response to the problem of the lack of accessibility.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63, and therefore denies them.

64.     On March 11, 2019, Laura Martin filed a suit against the City challenging the inaccessibility of Defendant's emergency shelter program.

**ANSWER:**  Admitted.

65.     On March 12, 2019, DRACH, in coalition with other allies, held a protest outside of the DFSS office at 10 S. Kedzie Ave., Chicago, Illinois to complain about the lack of accessibility in Defendant's emergency shelter program and to continue to demand a meeting with DFSS.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65, and therefore denies them.

66.     On or about December 5, 2019, DRACH held a storytelling event at Access Living's office to allow homeless individuals with disabilities to speak out about their problems accessing Defendant's emergency shelter program.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66, and therefore denies them.

67.     Cathleen O'Brien has used work time to support this campaign to make Defendant's emergency shelter program accessible.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67, and therefore denies them.

68.     DRACH, including Cathleen O'Brien have dedicated significant work hours to organizing the shelter accessibility campaign, including: helping DRACH organize the December 20, 2018 and March 12, 2019 protests, visiting the DFSS office in an effort to obtain information about the accessibility of Defendant's emergency shelter program, visiting soup kitchens to find people with disabilities affected by the inaccessibility of Defendant's emergency shelter program, and organizing the December 5, 2019 storytelling event.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68, and therefore denies them.

69.     Defendant's failure to provide an accessible emergency shelter program forced DRACH to divert its time and resources away from other housing initiatives, such as the campaign to end the state ban on rent control, to investigate and address the inaccessibility of Defendant's emergency shelter program.

**ANSWER:** Defendant denies the allegation that it failed to provide an accessible emergency shelter program. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 69, and therefore denies them.

70.     In addition, because DRACH devotes much of its time and efforts to resolving individual members' difficulties accessing affordable, accessible housing, Defendant's actions have also undermined and impeded DRACH from finding permanent housing solutions for its members.

**ANSWER:** Defendant denies the allegation that its actions have undermined and impeded DRACH's mission. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70, and therefore denies them.

## V.     The Martin Lawsuit

71.     On March 11, 2019, Laura Martin filed a complaint against the City and others in the United States District Court for the Northern District of Illinois, Case No. 19-cv-1709 (the "Martin Complaint").

**ANSWER:** The City denies that Laura Martin filed a complaint in Case No. 19-cv-1709. The City otherwise admits the allegations in Paragraph 71.

72.     The Martin Complaint alleged that the City denied Ms. Martin access to its homeless shelters because Ms. Martin's disability prevented her from climbing stairs and carrying her own luggage. The Martin Complaint further alleged that (1) Chicago's largest homeless shelter (PGM shelter) is inaccessible because it refuses to take people who cannot carry their own luggage; and (2) a shelter that purports to be accessible (Cornerstone Community Outreach) has an elevator that does not and never has worked.

**ANSWER:** The City denies that Laura Martin filed a complaint in Case No. 19-cv-1709. Defendant admits that Paragraph 72 accurately describes certain allegations in the complaint Ms. Martin filed.

73.     The Martin Complaint also alleged that Ms. Martin only eventually found shelter by working outside the City's triage and referral system and going to Sarah's Circle on her own.

**ANSWER:** The City denies that Laura Martin filed a complaint in Case No. 19-cv-1709. Defendant admits that Paragraph 73 accurately describes certain allegations in the complaint Ms. Martin filed.

74.     On information and belief, the City knows about the conditions of the shelters with which it coordinates.

**ANSWER:** Defendant states that the phrase "knows about the conditions of the shelters with which it coordinates" is vague, therefore Paragraph 74 is unanswerable in its current form. Defendant further states that it conducts annual health and safety inspections of the shelters within the City's shelter program. To the extent an answer is required, Defendant admits that it becomes aware of some shelter conditions, through its inspections or other means, but denies that it aware of all conditions at all times in every shelter.

75.     If the City knows that its largest shelter is inaccessible, it should ensure that its smaller, accessible shelters are, in fact, accessible, or at least fix their accessibility problems promptly.

**ANSWER:** Defendant states that Paragraph 75 does not make a factual allegation, and therefore, no answer thereto is required. To the extent an answer is required, Defendant denies Paragraph 75.

76.     According to an August 27, 2019 Memorandum Opinion and Order from Judge Gettleman in Ms. Martin's action: "The City's failure to do so gives rise to a plausible inference that the City knows that people with disabilities are unable to access shelters, but cannot be bothered to act on that knowledge."

**ANSWER:** Defendant admits that Paragraph 76 accurately quotes a portion of the Memorandum Opinion and Order in the Martin action, but denies that it accurately reflects the entirety of that order.

77.     On information and belief, since the filing of the Martin complaint, the City has not made significant improvements to the physical accessibility of its emergency shelter program.

**ANSWER:** The City denies that Laura Martin filed a complaint in Case No. 19-cv-1709. Defendant states that the phrase "significant improvements" is vague and that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, and therefore denies the same.

78.     On November 18, 2019, the Court entered judgment in favor of Ms. Martin for $25,001.00 and against the City.

**ANSWER:** Admitted.

## VI.    Ms. Carter's Inability to Access Defendant's Emergency Shelter Program

79.    Ms. Carter is a person with osteoarthritis. As a result, she is not able to climb stairs or independently enter a standard model van that has not been modified for use by people with disabilities.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations contained in paragraph 79, and therefore denies them.

80.    Ms. Carter was evicted from her apartment about four years ago. From that time until August 15, 2019, Ms. Carter found shelter by sleeping on sofas in other people's homes, staying in a friend's car, or, when she has the money, staying in hotels.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations contained in paragraph 80, and therefore denies them.

81.    Ms. Carter did not try to access the emergency shelter program until August 2019.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 81, and therefore denies them.

82.    On August 11, 2019, Ms. Carter was admitted to Weiss Hospital because she had fluid in her legs that caused her skin to break open. She was released the afternoon of August 13, 2019.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to

the truth of the allegations contained in paragraph 82, and therefore denies them.

83.    On the morning of August 13, 2019, before Ms. Carter was to be discharged, a social worker at Weiss Hospital called 311 from Ms. Carter's hospital room to locate a shelter for Ms. Carter. The social worker informed the 311 operator that Ms. Carter used a walker and needed an accessible van with a ramp or wheelchair lift.

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 80, and therefore denies them.

84.    In response to that call, Defendant's delegate agency, Catholic Charities, promised to send a van to pick up Ms. Carter and take her to PGM shelter.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 84, and therefore denies them.

85. Ms. Carter waited for the van from Catholic Charities in the waiting room of the emergency room at Weiss Hospital from about 3 p.m., when she was discharged, to 12 a.m. Around midnight, the head security guard told her she could not wait for the van in the waiting room.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 85, and therefore denies them.

86. Ms. Carter waited outside the hospital for about an hour and a half, before returning to the emergency room. When she returned, another security guard told her she could stay there until the morning, but then she would have to leave.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 86, and therefore denies them.

87. The Catholic Charities van arrived between 1:30 a.m. and 2:00 a.m. on the morning of August 14, 2019.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87, and therefore denies them.

88. Upon arrival, the driver from Catholic Charities helped Ms. Carter put her walker in the van but refused to help her get into the van.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 88, and therefore denies them.

89. Ms. Carter asked the driver whether he had a stepstool for the van. He did not. In addition, the handle to get into the van was broken. The driver told her that because she could not get in the van independently, he had to leave without her.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89, and therefore denies them.

90. Ms. Carter asked the driver if there was an accessible van to take her to PGM shelter. The driver said there was not. He also told her that even if there were an accessible van, since she "refused service," they would not send another van. Ms. Carter responded by explaining that she was not refusing service, she simply could not get into the van because it was not accessible.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 90, and therefore denies them.

91.     During the course of the conversation, the driver told her that PGM shelter had about 13 steps to get in, and asked if she could navigate those. Ms. Carter responded that she could not climb stairs.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91, and therefore denies them.

92.     After the driver left, Weiss Hospital would not let Ms. Carter back into the building. Since it was raining, Ms. Carter slept in a bus shelter across the street from the hospital.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92, and therefore denies them.

93.     When the buses started running in the early morning, she took a bus and went to Heartland Alliance Health Center ("Heartland"), not far from Weiss Hospital. Ms. Carter's primary care physician is at Heartland, so she went there to have a place to sit until she could figure out where to go next.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93, and therefore denies them.

94.     As Ms. Carter left the health center a few hours later, she ran into a woman in front of the building. She asked that woman whether she knew of a shelter nearby. The woman responded that she stayed at Sarah's Circle, a shelter located within the same building as Heartland.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94, and therefore denies them.

95.     Ms. Carter went back inside the building to Sarah's Circle and asked if they had a bed for her. She was told by the staff that they did not have a bed that night, but that she should call the next day at noon to see if there was a bed open for her.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95, and therefore denies them.

96.     On information and belief, the staff at Sarah's Circle went above and beyond the triage and intake system operated by Defendant when offering to work directly with Ms. Carter in her effort to find shelter instead of referring her back to the 311 line Defendant operates and the social worker at Weiss Hospital used.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96, and therefore denies them.

97.     Ms. Carter spent the night of August 14, 2019, in her friend's car.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 97, and therefore denies them.

98.     The next morning, August 15, 2019, Ms. Carter went back to Heartland to call Sarah's Circle. She called around 9 a.m. Sarah's Circle told her there was a bed available for her that night. A Sarah's Circle staff member told her to come up before 6 p.m., that she was only entitled to bring two bags, and that she needed identification to be able to stay there.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 98, and therefore denies them.

99.     Ms. Carter went there immediately. A staff member at Sarah's Circle told her that a bed would open up around lunchtime.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 99, and therefore denies them.

100.    Except when her medical care required her to spend a night in a hospital, Ms. Carter has stayed at Sarah's Circle from that time up to date on which she filed her complaint in this action on February 13, 2020.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100, and therefore denies them.

101.    When admitted to Sarah's Circle's shelter, Sarah's Circle staff told Ms. Carter that her stay could not exceed six months, and that she would have to leave no later than February 14, 2020. As of Ms. Carter's filing of her complaint in this action, that February 14, 2020 deadline has not been extended.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 101, and therefore denies them.

102.    As of Ms. Carter's filing of her complaint in this action, Ms. Carter had no housing or shelter available to her when the February 14 deadline arrived the following day.

**ANSWER:** Denied.

103.     On information and belief, Defendant's emergency shelter program remained as inaccessible to Ms. Carter on the date she filed her complaint in this action as it was in August of 2019.

**ANSWER:**  Denied.

104.     On the date she filed her complaint in this action, Ms. Carter was experiencing homelessness and in need of shelter once she left Sarah's Circle and faced the imminent threat of being denied access to the City's emergency shelter program.

**ANSWER:** Defendant denies that Plaintiff faced the threat of being denied access to

the City's shelter program. Defendant further states that it lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph

104, and therefore denies them.

105.     On information and belief, the City knows that its shelters are disproportionately likely to turn away people with disabilities, and the City nonetheless failed to fix that disparity.

**ANSWER:**  Denied.

## CAUSES OF ACTION

## <u>COUNT I</u>

## **DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT**

106.     Paragraphs 1 — 105 above are incorporated as if set forth fully herein.

**ANSWER:** Defendant incorporates all prior answers to Paragraphs 1-105 as if fully

stated herein.

107.     Section 504 of the Rehabilitation Act prohibits discrimination against otherwise qualified individuals on the basis of their disabilities by recipients of federal funding. See 29 U.S.C. § 794.

**ANSWER:**  Paragraph 107 consists of legal conclusions and thus requires no answer.

108.     Under Section 504, entities receiving federal financial assistance must make reasonable accommodations in their rules, policies, and practices when necessary to avoid discriminating against a person on the basis of a disability.

**ANSWER:**  Paragraph 108 consists of legal conclusions and thus requires no answer.

109.    Defendant receives federal funding and is subject to the requirements of Section 504.

**ANSWER:** Paragraph 109 consists of legal conclusions and thus requires no answer.

110.    Ms. Carter is a person with a disability[1] within the meaning of Section 504.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110, and therefore denies them.

111.    DRACH's membership consists entirely of persons with a disability within the meaning of Section 504.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111, and therefore denies them.

112.    Section 504 also prohibits Defendant from segregating individuals with disabilities and requires Defendant to ensure that people with disabilities receive services in the most integrated setting possible.

**ANSWER:** Paragraph 112 consists of legal conclusions and thus requires no answer.

113.    Defendant's decision to fund shelters in the current manner renders Defendant's emergency shelter program inaccessible to Ms. Carter, members of DRACH, and other individuals with mobility disabilities.

**ANSWER:** Denied.

114.    Defendant's decision to operate a shelter program in the current manner renders Defendant's emergency shelter program inaccessible to Ms. Carter, members of DRACH, and other individuals with mobility disabilities.

**ANSWER:** Denied.

115.    Defendant's acts and omissions constitute a violation of Ms. Carter's, members of DRACH's, and other individuals' with disabilities rights under Section 504. Defendant's conduct constitutes an ongoing and continuous violation of Section 504 and unless restrained and enjoined from doing so, Defendant will continue to violate Section 504. Defendant's acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Ms. Carter, members of DRACH, and other individuals with disabilities have no adequate remedy at law.

**ANSWER:** Denied.

---

[1] Section 504 uses the term "handicapped" which is disfavored. Disabled has the same legal meaning as "handicapped" under Section 504.

116.    Defendant's acts and omissions were made with deliberate indifference to Ms. Carter's right to be free from discrimination on the basis of her disability under § 504.

**ANSWER:** Denied.

## COUNT II

### DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

117.    Paragraphs 1 — 116 above are incorporated as if set forth fully herein.

**ANSWER:** Defendant incorporates all prior answers to Paragraphs 1-116 as if fully stated herein.

118.    Title II of the ADA prohibits discrimination against individuals with disabilities and extends the non-discrimination rule of Section 504 of the Rehabilitation Act to services provided by any public entity. See 42 U.S.C. § 12132.

**ANSWER:** Paragraph 118 consists of legal conclusions and thus requires no answer.

119.    Under the ADA, public entities must provide reasonable modifications when a policy, practice, or procedure discriminates on the basis of disability. Public entities must also make reasonable accommodations in their rules, policies, and practices when necessary to avoid discriminating against a person on the basis of a disability.

**ANSWER:** Paragraph 119 consists of legal conclusions and thus requires no answer.

120.    The ADA prohibits Defendant from segregating individuals with disabilities.

**ANSWER:** Paragraph 120 consists of legal conclusions and thus requires no answer.

121.    Defendant is a public entity subject to the requirements of the ADA.

**ANSWER:** Paragraph 121 consists of legal conclusions and thus requires no answer.

122.    Ms. Carter is a qualified individual with a disability within the meaning of the ADA.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 122, and therefore denies them. Responding further, Paragraph 122 contains legal conclusions to which no answer is required.

123.    DRACH's members are qualified individuals with disabilities within the meaning of the ADA.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 123, and therefore denies them. Responding further, Paragraph 123 contains legal conclusions to which no answer is required.

124.    Defendant's decision to fund shelters in the current manner renders Defendant's emergency shelter program inaccessible to Ms. Carter, members of DRACH, and other individuals with mobility disabilities.

**ANSWER:** Denied.

125.    Defendant's decision to operate a shelter program in the current manner renders Defendant's emergency shelter program inaccessible to Ms. Carter, members of DRACH, and other individuals with mobility disabilities.

**ANSWER:** Denied.

126.    Defendant's acts and omissions constitute a violation of Ms. Carter's, members of DRACH's, and other individuals' with disabilities rights under the ADA. Defendant's conduct constitutes an ongoing and continuous violation of the ADA and unless restrained and enjoined from doing so, Defendant will continue to violate the ADA. Defendant's acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Ms. Carter, members of DRACH, and other individuals with disabilities have no adequate remedy at law.

**ANSWER:** Denied.

127.    Defendant's acts and omissions were made with deliberate indifference to Ms. Carter's right to be free from discrimination on the basis of her disability under the ADA.

**ANSWER:** Denied.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs Gloria Carter and DRACH request that this Court:

A.    Declare that Defendant's operation of its emergency shelter program violates the ADA and the Rehabilitation Act by failing to make the emergency shelter program accessible to Ms. Carter, members of DRACH, and others with mobility disabilities;

B.    Declare that Defendant's choices in funding partners in its emergency shelter program violate the ADA and the Rehabilitation Act by failing to provide a system that is accessible to Ms. Carter, members of DRACH, and others with mobility disabilities;

C.    Enter a preliminary and permanent injunction against Defendant, ordering it to:

23

1. Operate its emergency shelter program so that it is accessible to Ms. Carter, members of DRACH, and others with mobility disabilities; and

2. Direct funding to partner organizations in such a way that the emergency shelter program is accessible to Ms. Carter, members of DRACH, and others with mobility disabilities;

D.      Award Ms. Carter compensatory damages in an amount to be proven at trial;

E.      Award Ms. Carter and DRACH reasonable costs and attorneys' fees; and

F.      Grant such other relief as this Court deems just and proper.

**ANSWER:**  Defendant denies that Plaintiffs are entitled to the relief requested in the Prayer for Relief.

## DEMAND FOR A JURY TRIAL

Plaintiffs Gloria Carter and DRACH demand a jury trial on all issues properly triable by a jury.

**ANSWER:**  Defendant states that this paragraph contains a jury demand to which no response is required.

## AFFIRMATIVE DEFENSES

### I.      NO STANDING - CARTER

Plaintiff Carter lacked standing to seek injunctive relief at the time the lawsuit was filed and has continued to lack standing to seek injunctive relief throughout the pendency of the case.

### II.      MOOTNESS - CARTER

Plaintiff Carter's claim for injunctive relief is moot.

### III.      NO STANDING – DRACH

Plaintiff DRACH lacks standing to bring this action.

Dated: May 19, 2021          Respectfully submitted,

Celia Meza. Acting Corporation Counsel for the City Of Chicago

BY:       _____Peter H. Cavanaugh_____
                 One of the Attorneys for Defendant

Andrew Mine
Oscar Piña
Peter Cavanaugh
City of Chicago Department of Law
Constitutional and Commercial Litigation Division
2 North LaSalle Street, Suite 520
Chicago, IL  60602
(312) 744-0897 | (312) 742-0797

<u>SERVICE LIST</u>

Robert N. Hermes
Andrew D. Shapiro
Porter, Wright Morris & Arthur LLP
321 North Clark Street, Suite 400
Chicago, IL 60654
Phone: (312) 756-8500
Fax: (312) 873-4373
rhermes@porterwright.com
ashapiro@porterwrigh.com

Charles R. Petrof
Mary Rosenberg
Kenneth M. Walden
Access Living of Metropolitan Chicago
115 West Chicago Avenue
Chicago, IL 60654

Phone: (312) 640-2124
Fax: (312) 640-2139
TTY: (312) 640-2169
cpetrof@accessliving.org
mrosenberg@accessliving.org
kwalden@accessliving.org

Patrick Nix-Hodes
Diane O'Connell
Arturo Hernandez
Law Project of the Chicago Coalition for the Homeless
70 East Lake Street, Suite 720
Chicago, IL 60601
Phone: (312) 641-4140
Fax: (312) 641-4144
patricia@chicagohomeless.org
diane@chicagohomeless.org
arturo@chicagohomeless.org